SOCONY-VACUUM OIL COMPANY, INC., Plaintiff, *v.* GERALD L. BAILEY, Defendant.

Supreme Court, Trial Term, Cattaraugus County, February 2, 1952.

*Raymond V. O'Connor* for defendant.

*Robert M. Diggs* for plaintiff.

WARD, J. This is an action tried at a trial term before a jury in which the plaintiff seeks to recover damages for injury to its oil pipe line resulting from an alleged trespass by the defendant.

The essential facts, as proved on the trial, are simple and generally conceded by both parties. The plaintiff, a producer

and distributor of oil and petroleum products, is the owner of an easement to maintain and operate and has, in fact, for a long period of time operated a pipe line across certain rural property in Cattaraugus County now owned by the Vacuum Gas Burner Company. At the time involved herein, the pipe line was being operated by the plaintiff in accordance with the provisions of the easement. It appears that under these conditions, the defendant, pursuant to a contract with the Vacuum Gas Burner Company to level the latter's property, operated a bulldozer in such a manner that he ran into and broke the plaintiff's pipe line. The instrument creating the easement was duly recorded but there is no proof that the defendant had actual knowledge of the location or even the existence of the line.

At the end of the plaintiff's case, the defendant moved for a dismissal of the complaint, which motion was renewed and a motion for a directed verdict also made at the close of the evidence. At that time, the plaintiff also moved for a directed verdict. Decision on all motions was reserved. The court submitted only the question of the amount of damages to the jury which returned a verdict of $100. The defendant thereupon moved to set aside the verdict and renewed his motion for a directed verdict dismissing the complaint. The plaintiff then moved for the entry of judgment in accordance with the finding of the jury. Decisions on these motions were likewise reserved.

The issue presented in this case should be spelled out at the outset. From an analysis of the pleadings and briefs, it appears that the plaintiff seeks to recover on the theory that the defendant committed a trespass to its easement and to its pipe line. If this court understands correctly the substance of the plaintiff's position, it attempts to claim an actionable wrong by the defendant against its easement of a type which might have been covered at common law by an action of trespass on the case and further, a wrong against its personalty, i.e., the pipe line, as a trespass to chattels, which might have been founded at common law on the ancient actions of trespass *vi et armis* or *de bonis asportatis*. It does not seek to recover on the theory of a trespass *quare clausum fregit* to its easement. Because of the requirement that trespass *quare clausum fregit* must be against a possessory estate in real property, it was well established at common law that an easement, being an incorporeal hereditament was not such an interest as would support that action. (Pollock's Law of Torts [14th ed., 1939] p. 299; 3 Tiffany on Law of Real Property [3d ed. 1939], § 814; cf. *First Baptist Church* v. *Witherell,* 3 Paige Ch. 296 [1832], and

*Shaw* v. *Beveridge,* 3 Hill 26 [1842], in which trespass was held to lie for interference with right of owner of church pew on theory such right was not an easement but a property right and therefore " real estate ".) In fact, on page 6 of its brief, plaintiff admits ejectment or trespass *quare clausum fregit* would not have been a proper common-law action for the interference alleged herein. It is equally clear that the plaintiff does not seek to recover on the theory of negligence and, in fact, the evidence would sustain no such claim. If it is to be successful, the plaintiff must recover upon a theory of liability not based on negligence.

It is true that under the common law the action of trespass on the case was not limited to situations where negligence was involved. Its purpose was to supply a remedy where the other forms of actions were not applicable. (*Kujek* v. *Goldman,* 150 N. Y. 176 [1896].) It was employed where the damage suffered was consequential or indirect and not the direct result of the act constituting the trespass as was required in the older form of actions of trespass *quare clausum fregit,* trespass *vi et armis* and trespass *de bonis asportatis.* Thus under the early law, there could be a negligent harm by direct contact remediable by trespass *vi et armis* or *de bonis asportatis* (*Percival* v. *Hickey,* 18 Johns, 257 [1820]) or a harm not based on negligence for which case was the proper action, the distinguishing factor being whether the harm was immediate and direct or consequential and indirect.

It is important to analyze the act which constitutes the alleged trespass before it can be found to be actionable under the principles underlying any of the common-law actions of trespass. In the absence of any question of negligence, the requisites were the same whether the act was to be remedied by an action of trespass to chattels or an action on the case. Before the act was actionable, it was necessary that it be voluntary. (*Smith* v. *Stone,* Sty. 65 [King's Bench, 1647].) There is no question that in the instant case the defendant was acting voluntarily when he operated the bulldozer in such a manner as to strike the plaintiff's pipe line. It must, however, have been more than just a voluntary act. The act must also have been intentional except in a case of negligence which it has already been established is not involved herein. It was not necessary, however, that the trespasser intend to commit a trespass or even that he know that his act will constitute a trespass (*Wintringham* v. *Lafoy,* 7 Cow. 735 [1827]). The actor may be innocent of moral fault, but there must be an intent to do the very act which

results in the immediate damage. In other words, trespass requires an intentional act. (Harper on Torts [1932 ed.], § 27.) Applying this requirement to the case at bar, it is difficult to find the defendant's act in striking the pipe to be an actionable trespass. There is no proof that the defendant intended to strike the pipe and, in fact, it is clearly established to the contrary, for he did not know the existence or location of the line, nor is he charged with such knowledge for purposes of determining whether his action was intentional. Without an intentional act, the defendant's conduct cannot give rise to a trespass and, therefore, the plaintiff's cause of action based on the theory of trespass must fail.

The court has carefully considered the cases cited by the plaintiff and does not find them determinative of the subject matter. *New York Steam Co.* v. *Foundation Co.* (195 N. Y. 43 [1909]) is distinguishable. There the court rested its decision on the fact that the work undertaken by the defendant *inevitably* injured the plaintiff's pipes and, since the defendant took its license from the city, subject to the burden of paying for the injury caused by its work, it must respond in damages for the injury. The court pointed out that any other rule " might result in utter destruction of public utility lines without liability " (p. 52) indicating it was influenced by the public purpose of the plaintiff therein. The doctrine of the *New York Steam Co.* case has not been extended nor, in fact, has it been relied on in later cases. See *Town of Greenburgh* v. *Shea Co.* (48 N. Y. S. 2d 69 [1944], affd. without opinion, 268 App. Div. 998 [2d Dept., 1944]) also cited by plaintiff which rests on contract and not on the absolute rule of liability inherent in trespass. The rule applicable to the public utility conduits has now developed in the direction of liability based on negligence where there is no actual knowledge of the existence or location of the lines. (*Frontier Tel. Co.* v. *Hepp*, 66 Misc. 265 [1910].) Certainly, no stricter rule can be applied to the defendant's conduct in a rural area under the facts in the case at bar than applicable to conduits in city streets.

Based upon the above, the motion of the defendant for a nonsuit and dismissal of the complaint made at the end of the plaintiff's case, his motion for a directed verdict and his motion to set aside the verdict of the jury are hereby granted. All other motions upon which decision was reserved are hereby denied.

Enter judgment in accordance with this decision.